UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ONPATH FEDERAL CREDIT UNION | CIVIL ACTION |
| VERSUS | NO. 20-1367 |
| UNITED STATES DEPARTMENT OF TREASURY, COMMUNITY DEVELOPMENT FINANCIAL INSTITUTIONS FUND | SECTION "R" (2) |

# ORDER AND REASONS

Before the Court are plaintiff OnPath Federal Credit Union's ("OnPath") motion to supplement the administrative record,[1] and defendant the United States Department of Treasury, Community Development Financial Institution Fund's ("the CDFI Fund") motion to exclude the expert report of Terrence Ratigan.[2] Defendant opposes the motion to supplement the record,[3] and plaintiff opposes the motion to exclude the expert report.[4]

For the following reasons, the Court denies plaintiff's motion to supplement the record, and grants defendant's motion to exclude the expert report.

---

[1]   R. Doc. 51.
[2]   R. Doc. 25.
[3]   R. Doc. 55.
[4]   R. Doc. 37.

## I.   BACKGROUND

This case involves a demand by the Treasury Department that OnPath Federal Credit Union repay approximately twelve million dollars in awards that it received from the Treasury's CDFI Program for fiscal years ("FYs") 2006 through 2009, 2011, and 2012.

The Treasury Department's CDFI Fund supports financial institutions that serve low-income and historically underserved individuals and communities.[5] Institutions seeking support from the CDFI Fund must apply for and receive CDFI certification in order to receive awards.[6] OnPath, a federal credit union based in Louisiana, originally applied for[7] and received[8] CDFI certification for FY 2006, and has received technical and financial assistance from the CDFI Fund since that time.[9]

On October 4, 2016, the Treasury Office of Inspector General (the "OIG") began an audit of the CDFI awards received by OnPath.[10] On July 11, 2019, after years of investigation, the OIG issued an audit report on its findings.[11] It found that "the CDFI Fund certified [OnPath] . . . in January

---

[5]   R. Doc. 19-4 at 144 (OIG Audit Report).
[6]   Id.
[7]   Id. at 3 (OnPath's Application for CDFI Certification) (Dec. 21, 2005).
[8]   Id. at 131 (OnPath's Original CDFI Certification) (Jan. 24, 2006).
[9]   See id. at 146 (OIG Audit Report).
[10]  Id. at 177 (CDFI Repayment Demand Letter to OnPath).
[11]  See id. at 135-176 (OIG Audit Report).

2006 based on invalid information" in OnPath's original application for assistance.[12] The OIG recommended that the Director of the CDFI Fund "determine whether [OnPath] was in default of its . . . Assistance Agreements as a result of submitting invalid information in its Certification Application and Assistance Agreements."[13] It further recommended that the CDFI Fund "take appropriate action to include . . . requiring [OnPath] to reimburse the CDFI Fund" for certain awards received.[14]

On November 13, 2019, the Program Manager of the CDFI Fund notified OnPath that, based on the OIG's audit, the CDFI Fund had "determined that, as a result of [OnPath] submitting invalid information in its 2006 Certification Application, the FYs 2006 through 2009, 2011 and 2012 awards made to [OnPath] constitute improper payments in accordance with the Improper Payments Elimination and Recovery Improvement Act of 2012 (31 U.S.C. [§] 3321)."[15] It therefore "terminate[d] the Assistance Agreements" for those years' awards, and "require[d] [OnPath] to repay the CDFI Fund for the aforementioned awards, which total[] $12,298,806."[16]

---

[12]   *Id.* at 140.
[13]   *Id.* at 141.
[14]   *Id.*
[15]   *Id.* at 178 (CDFI Repayment Demand Letter to OnPath). OnPath did not receive an award from the CDFI Fund for FY 2010. *See id.* at 146.
[16]   *Id.* at 178.

3

On May 4, 2020, OnPath filed suit against the CDFI Fund, seeking this Court's review under the Administrative Procedure Act ("APA").[17] OnPath seeks a declaratory judgment that the CDFI Fund wrongfully terminated the Assistance Agreements, and that OnPath is entitled to the awards that the Fund now demands to be repaid.[18]

The parties have each filed cross-motions for summary judgment based on the administrative record.[19] The present motions—plaintiff's motion to supplement, and defendant's motion to exclude—pertain to whether the Court will admit and review certain evidence from outside the administrative record.

In its motion to supplement the record,[20] plaintiff seeks to introduce three sets of documents not contained in the administrative record. First, it asks the Court to admit a June 18, 2021 report by Terrence Ratigan (the "Ratigan Report"),[21] an "expert in the areas of credit union activities, the certification and re-certification of credit unions as [CDFIs], and the policies, practices, and procedures of the CDFI Fund, particularly as they relate to

---

[17] R. Doc. 1 ¶ 3.
[18] *Id.* ¶ 92.
[19] R. Doc. 19 (The CDFI Fund's Motion for Summary Judgment); R. Doc. 52 (OnPath's Motion for Summary Judgment).
[20] R. Doc. 51.
[21] R. Doc. 34-5 at 30-37 (Ratigan Report).

4

CDFI credit unions."[22]  Second, plaintiff seeks admission of factual statements regarding OnPath's loans in FY 2004,[23] spreadsheets providing OnPath's loan data for FY 2004,[24] and the CDFI Fund's "Investment Area data"[25] at the time of OnPath's initial application for CDFI certification (collectively, the "loan data").  Third, plaintiff seeks to introduce a November 24, 2020 letter from the CDFI Fund to OnPath (the "2020 Letter").[26]

Defendant opposes the admission of these documents, both in its motion to exclude the Ratigan Report,[27] and its opposition to plaintiff's motion to supplement the record.[28]  It argues that the Court should confine its inquiry to the administrative record that existed at the time of the CDFI Fund's decision to demand repayment in 2019.[29]

The Court considers the parties' arguments below.

---

[22]  R. Doc. 34-5 at 1 ¶ 2 (Declaration of Terrence Ratigan).
[23]  R. Doc. 34-11 at 2 ¶ 6-9 (Declaration of Albert J. Richard).
[24]  R. Docs. 34-16 & 34-18.
[25]  R. Doc. 34-11 at 6-27.
[26]  *Id.* at 28 (Letter from the CDFI Fund to OnPath) (Nov. 24, 2020).
[27]  R. Doc. 25.
[28]  R. Doc. 55.
[29]  R. Doc. 25-2 at 1.

## II.   LEGAL STANDARD

In reviewing agency action under the APA, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1408 (5th Cir. 1987) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Often called the "record rule," this principle limits the Court's review "to the record in existence at the time the agency made its decision," *Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 444 (5th Cir. 2001) (citing 5 U.S.C. § 706).

The Court may look outside the administrative record in narrow circumstances. The Fifth Circuit has held that "[s]upplementation of the administrative record is not allowed unless the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *White Oak Realty, L.L.C. v. U.S. Army Corps of Eng'rs*, 746 F. App'x 294, 303 (5th Cir. 2018) (per curiam) (citing *Medina Cty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010)). In the Fifth Circuit, supplementation of the administrative record "may be permitted" in three situations:

 (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision,

 (2) the district court needed to supplement the record with "background information" in order to determine whether the agency considered all of the relevant factors, or

 (3) the agency failed to explain administrative action so as to frustrate judicial review.

*Medina*, 602 F.3d at 706 (cleaned up) (citations omitted).

Here, there is no contention that the first or third scenarios apply. The Court's inquiry addresses only the second: whether the Court "need[s] to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors." *Id.*

## III. DISCUSSION

OnPath contends that the Court should supplement the record with the Ratigan Report, the loan data, and the 2020 Letter because (i) they are necessary to determine whether the CDFI Fund considered all of the relevant factors,[30] and (ii) they help to explain complex subject matter.[31]

As a threshold matter, the Court finds that only the former justification is a cognizable reason to supplement the administrative record. The latter

---

[30] R. Doc. 51-2 at 6.
[31] *Id.* at 5-6.

contention—that the complex subject matter here warrants supplementation—fails for two reasons. First, plaintiff's authority for this "complexity" exception comes exclusively from jurisdictions outside the Fifth Circuit. *See, e.g.*, *Lands Council v. Powell*, 395 F.3d 1019 (9th Cir. 2005); *ITT Fed. Servs. Corp. v. United States*, 45 Fed. Cl. 174 (1999). The Fifth Circuit has enumerated three bases on which a reviewing court may supplement the administrative record, and it does not include "complex subject matter" among them. S*ee Medina*, 602 F.3d at 706. Furthermore, even if such a justification were recognized in this jurisdiction, any complex or technical issues in this case are adequately illuminated by the already extensive administrative record, as well as counsel's arguments in their briefs. The Court finds that the complexity of the subject matter in this case does not warrant supplementation of the record with the proffered materials.

The Court thus proceeds to determine whether it "need[s] to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors." *Id.* To this end, the Court addresses each of plaintiff's proposed submissions in turn.

## A. The Ratigan Report

Plaintiff seeks to supplement the administrative record with a report prepared by Terrence Ratigan, a credit-union expert and consultant.[32] Plaintiff submitted the Ratigan Report as part of its opposition to defendant's motion for summary judgment.[33] The Ratigan Report is an eight-page document, dated June 18, 2021, that summarizes Mr. Ratigan's review and analysis of "the OIG audit report, loan and member share data provided by OnPath, and information in the Administrative Record."[34] Attached as appendices to the Report are: (i) a prior report by Mr. Ratigan, dated January 2020, titled "Analysis of OnPath CDFI Eligibility 2005-2013" (the "2020 Report");[35] and (ii) a document dated June 18, 2021, titled "Results and Review of the Administrative Record" (the "Record Review").[36]

Significantly, the administrative record already contains Ratigan's 2020 Report,[37] as well as an earlier report authored by Mr. Ratigan and submitted to the CDFI Fund in May of 2018.[38] At issue here, then, is whether the Court should supplement the administrative record with two more

---

[32]  R. Doc. 34-5 at 86 (Curriculum Vitae of Terrence Ratigan).
[33]  *See id.* at 1-3 (Declaration of Terrence Ratigan).
[34]  *Id.* at 30-37 (Ratigan Report).
[35]  *Id.* at 38-62.
[36]  *Id.* at 63-70.
[37]  R. Doc. 19-4 at 184-207 (January 2020 Ratigan Report).
[38]  R. Doc. 42-1 at 13-17 (May 2018 Ratigan Report).

9

reports prepared by Mr. Ratigan: the Ratigan Report, and the attached Record Review, both dated June 18, 2021.

The Court finds no reason to do so. As established, the Court may supplement the administrative record if the non-record material helps the Court "to determine whether the agency considered all of the relevant factors." *Medina*, 602 F.3d at 706. But the 2021 Ratigan Report and Record Review add nothing of significance to the existing record, which already includes two prior reports from Mr. Ratigan, totaling 28 pages. Plaintiff contends that, at the time of the prior reports, neither OnPath nor Ratigan had access to the full administrative record, and that Ratigan's 2021 materials reflect his "expert review" of the newly available record.[39] But by Ratigan's own admission, "there is nothing in the [administrative record] that alters the central conclusions of the two prior reports."[40] And indeed, the 2021 materials reach the same conclusions stated in the 2020 Report: that the OIG's investigation was flawed and its conclusions unsupported, that the errors identified in OnPath's original application were common and expected for CDFIs at the time, and that OnPath was in fact eligible for CDFI

---

[39] R. Doc. 51-2 at 12.
[40] R. Doc. 34-5 at 66 (Record Review).

certification at the time of its application.[41] The Court finds that plaintiff has failed to articulate the unique contribution of Ratigan's 2021 materials. Accordingly, the Court cannot say that it "need[s] to supplement the record" with these materials. *Id.*

Furthermore, the nature of Mr. Ratigan's role and the contents of his reports reveal that the reports are far more than "background information" warranting supplementation. *See id.* Plaintiff states that Ratigan has "provided guidance and technical assistance to hundreds of credit unions," and has conducted "*considerable advocacy* with the CDFI Fund."[42] Both the 2021 Ratigan Report and Record Review contain extensive advocacy and argumentation that are better suited for legal briefs than expert reports. For example, Ratigan repeatedly emphasizes his skepticism about the origin of the OIG's audit of OnPath. He writes that "[t]here is no indication in the [record] regarding the content of the allegation" that prompted the audit, and says that the CDFI Fund's decision to refer the investigation to the OIG "remains a mystery."[43] Ratigan elsewhere calls OnPath's eligibility for CDFI certification "the *material* question" for the purposes of the audit.[44] Ratigan

---

[41] *Compare id.* at 41 (Findings, 2020 Report), *with id.* at 66 (Findings, 2021 Record Review), and *id.* at 30 (Findings, 2021 Ratigan Report).
[42] R. Doc. 37 at 4 (emphasis added).
[43] R. Doc. 34-5 at 31 (Ratigan Report)
[44] *Id.* at 30 (emphasis added).

11

goes a step farther in his 2021 Record Review, advancing a lengthy analogy to an umpire's call in baseball game.[45] He likens the OIG's investigation to an umpire's attempt to answer the "immaterial question" of whether a first baseman came off the bag before catching the ball and tagging a runner out.[46] Ratigan concludes that, because the OIG "ignored or never looked for" evidence that "the right call had been made," "a game decided more than a decade ago is now being replayed."[47] The argumentative nature of the 2021 Ratigan materials undermines plaintiff's contention that these submissions simply provide "background information" necessary for the Court's determination of "whether the agency considered all of the relevant factors." *Id.*; *see also Buckingham Twp. v. Wykle*, 157 F. Supp. 2d 457, 467 n.10 (E.D. Pa. 2001) ("A party may not undermine an agency decision . . . with an . . . expert expressing disagreement with the views of . . . the agency . . . . [W]ere it otherwise, virtually every agency action involving expertise or technical analyses could be obstructed by a party who engaged an expert willing to disagree with the views or conclusions of . . . the agency." (citations omitted)).

---

[45] *See id.* at 66-67 (Record Review).
[46] *Id.*
[47] *Id.* at 67.

The Ratigan Report and its appended materials amount to a "new record made initially in the reviewing court." *Woods*, 826 F.2d at 1408. For the reasons given, the Court finds no "unusual circumstances," *White Oak*, 746 F. App'x at 303, or other justification for supplementing "the administrative record already in existence" with these materials. *Woods*, 826 F.2d at 1408. Plaintiff's attempt to put these documents before the Court merely reflects its effort to get the last word. The Court denies plaintiff this privilege. Accordingly, plaintiff's motion[48] to supplement the record with the Ratigan Report is denied, and defendant's motion[49] to exclude the Ratigan Report is granted.

### B.   The Loan Data

Plaintiff also seeks to introduce the loan data, which purportedly governed its initial application for CDFI certification. The loan data consists of (i) factual assertions regarding OnPath's loans in FY 2004,[50] (ii) spreadsheets of OnPath's loan data for FY 2004,[51] and (iii) the CDFI Fund's "Investment Area data" as of 2005.[52] Plaintiff submits the loan data twice,

---

[48]   R. Doc. 51.
[49]   R. Doc. 25.
[50]   R. Doc. 34-11 at 2 ¶ 6-9 (Declaration of Albert J. Richard).
[51]   R. Docs. 34-16 & 34-18.
[52]   R. Doc. 34-11 at 6-27.

by way of two different affidavits: one by Terrence Ratigan,[53] and one by its former CEO, Albert J. Richard.[54] The Court does not admit this data.

Plaintiff contends that the Court should supplement the administrative record with the loan data to show that the CDFI Fund failed to consider the "most relevant factor," which, plaintiff asserts, is whether OnPath was in fact eligible for CDFI certification.[55] Plaintiff asserts that this information shows that OnPath was in fact eligible at the time of its original application.[56] But this fails to warrant admission of the materials. The Court's APA review of the agency's decision does not require the Court to determine whether OnPath was in fact eligible for CDFI certification and funding. Indeed, that task runs far afield of this Court's institutional role. Attempting to make an actual-eligibility determination based on spreadsheets of loan data would impermissibly substitute the Court's non-expert, non-technical judgment for the technical expertise of the agency. *See Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 140 S. Ct. 1891, 1905 (2020) (noting that, under the

---

[53] R. Doc. 34-5 at 1-3.
[54] R. Doc. 34-11 at 1-3.
[55] R. Doc. 51-2 at 13.
[56] *Id.* at 13-14 ("Mr. Richard's declaration establishes that, had either the OIG or the CDFI Fund considered *the* relevant factor of eligibility and objectively tested OnPath's eligibility based on best available methodology and data, which they easily could and should have done, they would have concluded that OnPath was in fact eligible for CDFI certification at the time of its 2005 Certification Application.").

14

arbitrary-and-capricious standard, the Court is "not to substitute its judgment for that of the agency" (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009)); *cf. Judulang v. Holder*, 565 U.S. 42, 56 (2011) (finding that the agency's approach to determining eligibility for immigration relief was arbitrary and capricious, but not reaching the actual eligibility of the petitioner, noting instead that "[p]erhaps aliens like [petitioner] should be eligible for § 212(c) relief, or perhaps they should not").

Instead, the Court must decide whether the CDFI Fund's action was arbitrary and capricious based on the record before it. *See* 5 U.S.C. § 706. The loan data is unnecessary for that judicial determination. The record already contains the OIG's Audit Report, a 37-page document detailing the purpose, methods, and findings of its investigation into OnPath's CDFI awards.[57] The record also contains OnPath's original application for CDFI certification,[58] which is nearly 130 pages long, and which forms the basis of the CDFI Fund's repayment demand. The Audit Report analyzes the information submitted in this application, as well as additional information

---

[57]    R. Doc. 19-4 at 135-175 (OIG Audit Report)
[58]    *Id.* at 3-130 (OnPath's Application for CDFI Certification) (Dec. 21, 2005).

15

provided by OnPath's management during the audit period.⁵⁹ The record also includes extensive notes from multiple interviews and meetings between the OIG and OnPath during the audit period.⁶⁰ The administrative record is sufficient for the Court "to determine whether the agency considered all of the relevant factors," *Medina*, 602 F.3d at 706, and, in turn, whether the agency's action as to plaintiff was arbitrary and capricious under the APA. The Court denies plaintiff's request to supplement the record with the loan data.

### C. The 2020 Letter

Finally, plaintiff seeks to introduce a 2020 Letter from the CDFI Fund. The letter notifies OnPath that, pursuant to the OIG's recommendation, the CDFI Fund reviewed OnPath's application for recertification for FY 2013, and found that OnPath's application was "valid and complete."⁶¹ It further stated that OnPath "met all eligibility requirements to be certified as a CDFI."⁶² Plaintiff contends that this letter is "highly relevant" to the question

---

| | |
|---|---|
| 59 | *See, e.g.*, *id.* at 147 (OIG Audit Report). |
| 60 | *See, e.g.*, R. Doc. 34-14 at 8 (Apr. 6, 2015); *id.* at 17 (Apr. 23, 2015); *id.* at 23 (Nov. 5, 2015); *id.* at 40 (Mar. 29, 2017); *id.* at 46 (Apr. 26, 2017); *id.* at 50 (June 25, 2018). |
| 61 | R. Doc. 34-11 at 28 (Letter from the CDFI Fund to OnPath) (Nov. 24, 2020). |
| 62 | *Id.* |

16

of whether the CDFI considered all the relevant factors, *see id.*, because it "directly contradicts" its decision to demand repayment based on the FY 2005 application.[63] But the Court finds that there is no inherent contradiction in the CDFI Fund's finding problems with one application (*i.e.*, for FY 2005), and no problems with a different application (*i.e.*, for FY 2013). Plaintiff also argues for admission of the 2020 Letter because the letter states an actual eligibility determination,[64] unlike the 2019 repayment demand, and thus "begs the question" of why the CDFI Fund did not determine OnPath's actual eligibility for FY 2005 before issuing its 2019 repayment demand.[65] But even if the CDFI Fund tested OnPath's eligibility based on the FY 2013 application, that determination, and the 2020 Letter memorializing it, were not before the agency at the time of the decision under review in this case. The Court therefore does not require the 2020 Letter as "'background information' in order to determine whether the agency considered all of the relevant factors." *Id.* Accordingly, the Court denies plaintiff's motion to supplement the record with the 2020 Letter.

---

[63] R. Doc. 51-2 at 15-16.
[64] R. Doc. 34-11 at 28 ("The CDFI Fund has . . . found that the Certification application was valid and complete, and [OnPath] *met all eligibility requirements to be certified as a CDFI*.") (emphasis added).
[65] R. Doc. 51-2 at 16.

17

In sum, admitting plaintiff's extra-record submissions would erode the record rule and undermine its purposes. Importantly, it is not only plaintiff that is bound by the record rule; the agency too is restricted in what it may offer and argue to this Court. The CDFI Fund may not introduce or rely on evidence that was not before it at the time of the challenged decision, nor may it offer "'post hoc' rationalizations" for its decision. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971) (citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168-69 (1962)). Indeed, it is a "'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Univ. of Calif.*, 140 S. Ct. at 1908 (citations omitted). The narrow scope of the Court's review limits plaintiff's evidence just as well as it limits the agency's. The Court finds no reason to relax the dictates of the record rule in this case.

Plaintiff's motion to supplement the record[66] is denied, and defendant's motion to exclude the expert report[67] is granted. The Court therefore excludes plaintiff's exhibits 3 and 9 to its opposition[68] to defendant's motion for summary judgment.

---

[66]  R. Doc. 51.
[67]  R. Doc. 25.
[68]  R. Doc. 34-5 & 34-11.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion to supplement the record,[69] and GRANTS defendant's motion to exclude the expert report.[70]

New Orleans, Louisiana, this __6th__ day of December, 2021.

*Sarah Vance*

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[69] R. Doc. 51.
[70] R. Doc. 25.